In the Matter of GULF OIL CORPORATION, Petitioner, against LAZARUS JOSEPH, as Comptroller of the City of New York, Respondent.

First Department, February 16, 1954.

*Matthew S. Gibson* for petitioner.

*Bernard H. Sherris* of counsel (*Stanley Buchsbaum* with him on the brief; *Denis M. Hurley, Corporation Counsel,* attorney), for respondent.

*Per Curiam.* The petitioner, a Pennsylvania corporation, does an extensive interstate as well as intrastate business. It brings this article 78 proceeding to review a final determination of the comptroller of the City of New York, denying its application for a refund of gross receipts taxes paid during the years 1945 through 1949 for the privilege of doing business in the city (Administrative Code of City of New York, ch. 41, tit. RR). The law provides that where receipts cannot be taxed in their entirety by reason of the Federal Constitution, the comptroller

shall establish rules, regulations and methods of allocation to the end that only such part of the receipts as is attributable and allocable to the doing of business in the city shall be taxed. The comptroller has promulgated certain rules and allocation formulae for apportioning such taxable receipts from sales in interstate commerce.

We regard *Matter of Olive Coat Co.* v. *McGoldrick* (287 N. Y. 769, affg. 261 App. Div. 1070) as controlling on every aspect of this proceeding and as compelling a confirmation of the comptroller's determination. That case reviewed and approved the same local tax law and the same allocation formulae as are involved here. (See, also, *Spector Motor Service* v. *O'Connor*, 340 U. S. 602, 609–610; *International Shoe Co.* v. *Shartel*, 279 U. S. 429; *Joseph* v. *Carter & Weekes Co.*, 330 U. S. 422, 428, and *Matter of United Air Lines* v. *Joseph*, 282 App. Div. 48.)

Some of us entertain reservations concerning the soundness of certain ingredients of the comptroller's allocation formula. Roughly, this is a three-factor formula which seeks to allocate the appropriate percentage of interstate sales subject to tax by striking ratios between, first, the value of the taxpayer's property in the city and the value of its property elsewhere in the United States, and second, between wages paid locally and elsewhere in the country. For the third factor the comptroller has devised what purports to be a basis for computing a proper percentage of gross receipts. The total of the three percentages thus obtained is then averaged through dividing by three. If the result exceeds 66⅔% it is reduced to that figure; if it is less than 33⅓% it is increased to that figure. The resultant computation becomes the percentage of interstate commerce allocated to the gross receipts tax.

There is no doubt that the formula will operate unevenly and in some instances work hardships; and it can be argued with some persuasiveness that the receipts factor is weighted in favor of the city. But something short of laboratory uniformity will satisfy the constitutional requirements. In this connection it was said in *Illinois Cent. R. R. Co.* v. *Minnesota* (309 U. S. 157, 161): "That the apportionment may not result in mathematical exactitude is certainly not a constitutional defect. Rough approximation rather than precision is, as a practical matter, the norm in any such tax system."

More vexing is that provision in the regulations which fixes a minimum allocation of 33⅓% of the interstate receipts as subject to the tax. Conceivably, the imposition of such an arbitrary figure could discriminate against interstate commerce.

For example, if the three-factor formula has integrity, and results in an indicated allocation of, let us say, 2% of interstate receipts, it might be difficult to justify a 33⅓% allocation as reasonably apportioned to the taxpayer's activities within the city.

However, the taxpayer in the *Olive Coat Co.* case (*supra*) explicitly argued in the Court of Appeals that the allocation formula, including its 33⅓% minimum, was arbitrary, capricious and a denial of due process of law. True, the 33⅓% minimal allocation did not become operative in the *Olive Coat Co.* case, since the averaging of the three factors produced a figure of 55%. But in this case, the computations under the three-factor formula were 32.2%, 30.85% and 31.9% in the three years that the minimum requirement came into play — scarcely a shocking margin in the application of a formula that at best is calculated to produce approximate figures.

Furthermore, the petitioner did not avail itself of the opportunity to make application for a different and more appropriate method of allocation, pursuant to article 210 of the comptroller's regulations, which provides that a taxpayer may make such application, and if " any of the prescribed allocation formulae works unfairly or inequitably to a particular taxpayer or class of taxpayer, he [the comptroller] may provide for a different or other method of allocation ", etc. Also, since the petitioner operates a refinery in Staten Island, it could probably have used an alternative formula (Comptroller's Regulations, art. 211, subd. II), which is based on the cost of the interstate goods that were manufactured here.

The determination of the comptroller should be confirmed.

CALLAHAN, J. (dissenting). The petitioner is a Pennsylvania corporation maintaining large oil refineries in several States including one in New York City. It stores within the city large quantities of its oil products refined in other States, commingling them with those refined here. It sells both the New York refined oil and the other stored oil in intrastate business in New York as well as in interstate commerce from New York. It conducts numerous operations of its executive, sales and accounting departments here.

The City of New York has imposed a gross receipts tax on petitioner for the privilege of doing its intrastate business in New York. It has enacted local laws imposing that tax and the comptroller adopted regulations pursuant to those laws indicating how the tax is to be computed.

The questions raised are (1) whether the city may include in the measure of the tax an allocable share of the receipts from interstate sales of the oil sold or refined and sold here; (2) did the formula applied by the city reasonably and lawfully measure the tax; and (3) did the local law discriminate against this taxpayer in favor of those engaged solely in local activities.

The regulations provide for the apportionment of the tax imposed where the whole receipts of the taxpayer may not be used as a basis for the tax under the Federal Constitution because interstate commerce is involved. The regulations provide that in such instances three factors are to be employed in determining the portion of the receipts from interstate sales which is properly allocable to doing business within the city, where sales of goods is the activity of the taxpayer. A New York manufacturer, however, may employ an alternative formula. The three factors used are: (1) a percentage based on the comparative value of locally situated property to all property in the United States; (2) a percentage based on the comparative totals of salaries and wages paid to those workers engaged locally and to all employees of the taxpayer in the United States; and (3) a receipts factor.

Receipts are segregated into four categories: (a) receipts from sales in foreign commerce; (b) nonallocable and nontaxable receipts; (c) wholly taxable receipts; and (d) allocable receipts, i.e., receipts from sales from interstate commerce subject to allocation. After the foregoing segregation is made, receipts from foreign commerce and nonallocable and nontaxable receipts are deducted. A percentage is then computed on the basis of a fraction, the numerator of which is the sum of the wholly taxable receipts plus one third of the allocable receipts, and the denominator a sum representing all wholly taxable receipts plus the entire allocable receipts.

The percentage from the foregoing three factors is averaged, and if the average is less than $33\frac{1}{3}\%$, it is provided that it shall be increased to that figure for the purpose of allocation.

The first contention of the taxpayer that no receipts from any interstate transactions may be included in the tax base under the Federal Constitution would seem to be untenable. This is an apportioned tax imposed for the privilege of conducting intrastate business, and it would seem permissible for the locality to consider receipts from interstate business as well as receipts from intrastate business in fixing the tax, so long as the amount of the interstate receipts included is based on a fair proportion of the taxpayer's activity here as compared

to its total activities in respect to such interstate transactions (*Spector Motor Service* v. *O'Connor,* 340 U. S. 602; *Norton Co.* v. *Department of Revenue,* 340 U. S. 534; *Joseph* v. *Carter & Weekes Co.,* 330 U. S. 442; *Adams Mfg. Co.* v. *Storen,* 304 U. S. 307; *Matter of Olive Coat Co.* v. *McGoldrick,* 261 App. Div. 1070, affd. 287 N. Y. 769; *Matter of United Air Lines* v. *Joseph,* 282 App. Div. 48).

The third claim that the formula is discriminatory is also overruled.

The sole question remaining, and the only one that we will discuss at length, is the second, which concerns the reasonableness and legality of the formula applied.

We think that the formula is unreasonable and illegal insofar as the formula for calculating the receipts factor forces an arbitrary minimum of over $33\frac{1}{3}\%$ of allocable receipts as the receipts factor and a minimum of $33\frac{1}{3}\%$ if the average of the three factors used is less than that percentage. Whatever might be the power of the locality with respect to the use of some minimum where there is no accurate method of ascertaining a fair proportion of the local activities, the use of such minimum, where the ability to so accurately measure is conceded, would make the use of the minimum arbitrary.

A receipts factor would undoubtedly be admissible and appropriate, but as in the case of the other factors it shall be calculated on a relevant and not an arbitrary or fictional basis. We do not see how the loaded receipts factor incorporated in the regulations or the use of the one-third overall minimum can be said to indicate a fair proportion of the taxpayer's business allocable to New York City where, in fact, the proportion computed is ascertainable and may be actually less than one third.

The requirement as to apportionment is set forth in *Gwin, White & Prince* v. *Henneford* (305 U. S. 434, 438–439), where the court said: " under the commerce clause, in the absence of Congressional action, state taxation, whatever its form, is precluded if it discriminates against interstate commerce or undertakes to lay a privilege tax measured by gross receipts derived from activities in such commerce which extend beyond the territorial limits of the taxing state. Such a tax, at least when not apportioned to the activities carried on within the state [citing cases], burdens the commerce in the same manner and to the same extent as if the exaction were for the privilege of engaging in interstate commerce * * * Here the tax, measured by the entire volume of the interstate commerce in

which appellant participates, is not apportioned to its activities within the state.''

And in *Hans Rees' Sons* v. *North Carolina* (283 U. S. 123) the Supreme Court said (p. 134): '' When, as in this case, there are different taxing jurisdictions, each competent to lay a tax with respect to what lies within, and is done within, its own borders, and the question is necessarily one of apportionment, evidence may always be received which tends to show that a State has applied a method, which, albeit fair on its face, operates so as to reach profits which are in no just sense attributable to transactions within its jurisdiction.''

In *Norfolk & Western Ry. Co.* v. *North Carolina* (297 U. S. 682, 685–686) the rule was stated as follows: '' A formula not arbitrary on its face or in its general operation may be unworkable or unfair when applied to a particular railway in particular conditions. Cf. *Hans Rees' Sons* v. *North Carolina,* 283 U. S. 123, 129, 132; *Southern Ry. Co.* v. *Kentucky,* 274 U. S. 76, 83, 88. * * * If this is made to appear with an ensuing burden on the taxpayer grossly in excess of the results of a more accurate apportionment, the statute to that extent is an unconstitutional endeavor to tax the income of a business in another jurisdiction. *Hans Rees' Sons* v. *North Carolina, supra.*''

If an arbitrary minimum of $33\frac{1}{3}\%$ may be employed, then a minimum of 50% or even more may also be employed. Other States with which these interstate sales came in contact might also exercise the right to impose an arbitrary minimum for the privilege of their local activities, and thus multiple taxes would be imposed which would place an unlawful burden on interstate commerce. If the arbitrary minimum is removed and the actual fair proportion used, then the danger of such multiple tax would appear to be eliminated. That the regulation also contains a maximum of $66\frac{2}{3}\%$ does not justify the use of a minimum. The use of a maximum, if lower than the actual, would not, of course, contribute to any multiple taxation, nor could it afford any cause of complaint to a taxpayer.

We do not find that the availability of an alternative method of allocation provided in the present regulation justifies what has been done here. It is apparent that the alternative or special allocation is to be applied solely in the discretion of the comptroller. Such an alternative is not a '' remedy '' for the taxpayer, when its application is solely in the discretion of the tax collector (*Prendergast* v. *New York Tel. Co.,* 262 U. S. 43, 48). We think that the taxpayer is entitled to have any method applied in fixing his tax to be so drawn that it does not compel

it to pay a tax that would unduly burden commerce and thus conflict with constitutional restrictions.

Although the same minimum was in the regulations at the time the *Olive Coat Co.* case (*supra*) was before this court and the Court of Appeals, the proportion of business in New York was actually 55%, and thus the minimum had no application.

My dissent in the *United Air Lines* case (*supra*) and *Matter of United Piece Dye Works* v. *Joseph* (282 App. Div. 60) called for no discussion as to the propriety of the formula, since the majority of the court held the imposition of the tax to be unconstitutional and void in any event.

We think that the matter should be remitted to the comptroller for further action not inconsistent with this opinion.

BASTOW, BOTEIN and BERGAN, JJ., concur in *Per Curiam* opinion; CALLAHAN, J., dissents in opinion in which PECK, P. J., concurs.

Determination confirmed, with $20 costs and disbursements to the respondent.