Fuld, J. (dissenting).
In 1952, Mercury Machine Importing Corp., engaged in the business of importing sewing machines from Japan, paid the city a business tax on gross receipts (Administrative Code of City of New York, § B46-7.0). A year later, the taxpayer filed an application for a refund which was denied by the comptroller. In 1955, after the local law had been held unconstitutional when applied to business in interstate or foreign commerce (see Matter of United Piece Dye Works v. Joseph, 282 App. Div. 60, affd. 307 N. Y. 780, cert. denied 348 U. S. 916), Mercury commenced this plenary suit to recover the taxes erroneously levied and paid.
There is no doubt, and the city concedes, that the tax should not have been imposed or collected. However, it objects to repaying the amount of the tax on the ground that it was not *431 paid under protest or as a result of duress, and contends that it is, therefore, under no legal obligation to repay it.
It is unquestioned that neither protest nor duress need be shown to permit a taxpayer to recover taxes erroneously paid under a mistake of fact. (See Adrico Realty Corp. v. City of New York, 250 N. Y. 29, 32.) And, while the rule had been otherwise with respect to taxes paid under a mistake of law, it seems clear to me that the legislature changed this in 1942. In that year, section 112-f was added to the Civil Practice Act to provide that, “ When relief against mistake is sought in an action or proceeding * * *, relief shall not be denied merely because the mistake is one of law rather than one of fact.”
The legislature thus revealed, in words as plain as possible, a design to abolish and put an end to the old artificial distinction between a mistake of law and a mistake of fact. No words of qualification were used, no exceptions were expressed or implied. Indeed, in the very Report to which Judge Vajst Voorhis refers in his opinion (p. 427), the Law Revision Commission, which recommended enactment of section 112-f, indicated that the statute should apply to “ Cases Where an Individual Sues a Governmental Body”, and at no point was it suggested that tax cases should be excluded from the statute’s coverage (1942 Report of N. Y. Law Rev. Comm., pp. 49-50). On the contrary, the Report actually cites decisions concerned with a claim that a tax was “ illegally levied ” or its collection “ barred by statute ” (id., p. 49, n. 60).[1]
In any action or proceeding, section 112-f broadly declares, relief against mistake is not to be denied because the mistake happens to be one of law rather than of fact. And just as it is not possible to find basis in the statute’s language for concluding that the provision deals with all actions or proceedings except those involving taxes, so it is impossible to perceive any justification in considerations of policy for reaching such a conclusion.
However, it is urged that the very general wording of the statute should not be applied where taxes are involved, and *432 that statutes which in general terms divest rights or privileges will not be applied to a governmental body acting in its sovereign capacity; that the reason for the traditional rule— permitting refunds of taxes paid under a mistake of law only where a protest has been made — is to preserve the financial stability of a municipality which might be shaken in the event refunds are ordered “wholesale” in the case of highly productive taxes which turn out to be unconstitutionally imposed or illegally levied.
Considerations such as these, even if otherwise persuasive, cannot compel a court to disregard the unequivocally clear language of the statute. A taxpayer, who pays a tax under the mistaken impression that the levy is constitutional and valid and has to be paid, should not be denied relief, when one who pays under some mistake of fact is granted a refund. It is quite likely that more tax revenue may be involved in the mistake of law eases, where, for instance, a statute has been declared unconstitutional, than in the fewer mistake of fact situations. It impresses me as the merest sophistry to suggest, as the city does, that, the greater the amount of money illegally collected, the stronger the reason for not returning it. Be that as it may, though, no valid considerations of public finance require a distorted or uneven reading of section 112-f.
As a matter of fact, the Federal Government dispensed with the necessity of protest as a condition precedent to recovery of taxes illegally levied as long ago as 1924 (43 U. S. Stat. 343; see District of Columbia v. McFall, 188 F. 2d 991, 992), and in 1949 the City of New York itself eliminated from its sales tax laws the requirement that a taxpayer pay ‘ ‘ under protest ’ ’ as a condition of claiming, at the administrative level, a refund of taxes “ erroneously, illegally or unconstitutionally ” collected ( Administrative Code of City of New York, § N41-8.0, as amd. by Local Law, 1949, No. 44). And, while the requirement was not eliminated vis-a-vis the tax in suit, the general business tax, it is noteworthy that in an official study of the administration of New York City’s special taxes it was expressly recommended, in respect to this very tax, that the city ‘‘ Remove the requirement that payment be made under protest if the taxpayer is to have a right later to enter a claim for refund.” (Haig-Shoup, Report on the Financial Problem of the City of New York [1952], p. 218.) These provisions relating to *433 administrative refunds are not, of course, determinative in the plenary actions before us, but they certainly shed light on the policy arguments that have been advanced.
Modern and enlightened tax administration frowns upon the imposition of technical obstacles to the refunding of illegally collected taxes and, surely, this court should not strain to read into section 112-f an exception, relating to the refund of taxes, not provided for by the legislature. In all conscience and equity, the taxpayer should recover what he mistakenly paid and what the city illegally collected, and nothing in the history of section 112-f or its background even suggests a departure from its language, which so plainly sanctions recovery.
In addition to the appeal by the city in the Mercury Machine Importing Corp. case, we have before us two other appeals — one taken by Berkshire Emitting Mills and the other by the United States Envelope Company — in which the complaints were dismissed. I see no essential difference between the cases. None of these taxpayers knew, or could have known, that the tax statute would be held unconstitutional as applied to interstate or foreign business, and in each instance the taxpayer paid the tax because of mistake. Beimbursement should be allowed, therefore, not only to Mercury which made the tax payment because its accountant erroneously believed that its foreign business was subject to local taxation, but also to Berkshire and United States Envelope which, somewhat more “ sophisticated ” (to employ Judge Van Voorhis’ term), doubted the validity of the tax, yet paid it for the reason, among others, that it could not actually know that the tax would be stricken as unconstitutional.
I would affirm in the Mercury Machine case and reverse in the other two cases.
In Mercury Mach. Importing Corp. v. City of New York: Desmond, Dye, Froessel and Burke, JJ., concur with Van Voorhis, J.; Fuld, J., dissents in an opinion in which Conway, Ch. J., concurs.
Order of the Appellate Division reversed and the judgment of Special Term reinstated, with costs in this court and in the Appellate Division. First question certified answered in the negative. Second question certified not answered.
*434 . In United States Envelope Go. v. City of New York: Desmond, Dye and Fboessel, JJ., concur with Van Voobhis, J.; Fuld, J., dissents in an opinion in which Conway, Ch. J., concurs; Burke, J., taking no part.
Judgment affirmed, with costs.
In Berkshire Knitting Mills v. City of New York: Desmond, Dye and Froessel, JJ., concur with Van Voorhis, J.; Fuld, J., dissents in an opinion in which Conway, Ch. J., concurs ; Burke, J., taking no part.
Judgment affirmed, with costs.

. The courts of Connecticut and Kentucky have, as Judge Vax Voorhis notes (opinion, pp. 427—428), denied recovery of taxes paid under a mistake of law, but the fact is, and it may not he overlooked, that in neither of those states is there a statute such as section 112-f of the Civil Practice Act.